Erin Rose Ronstadt, SBN 028362
Kevin Koelbel, SBN 016599
Clayton W. Richards, SBN 029054
OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745
(602) 761-4443 Fax
erin@oberpekas.com
kevin@oberpekas.com
clayton@oberpekas.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Estefana Campos (f.k.a. Estefana Cuevas), a married woman;<br><br>Plaintiff,<br><br>v.<br><br>AutoZone, Inc., a plan administrator; and Aetna Life Insurance Company, a plan fiduciary;<br><br>Defendants. | No.<br><br>**COMPLAINT**<br><br>(Jury Trial Requested) |

For her claims against Defendants AutoZone, Inc. ("AutoZone") and Aetna Life Insurance Company ("Aetna"), Plaintiff Estefana Campos ("Ms. Campos") alleges as follows:

**JURISDICTION**

1. This is an action for failure to pay short-term disability ("STD") and long-term disability ("LTD") benefits under the AutoZone Welfare Benefit Plan (the "Plan").

2. At all relevant times, Ms. Campos was a participant and beneficiary of the STD and LTD Plans as an employee of AutoZone.

3. STD benefits are exempt from the Employee Retirement Income Security Act of 1974 ("ERISA").

4. All claims related to LTD benefits are subject to ERISA.

5. All claims are subject to the diversity jurisdiction of this Court pursuant to 28 U.S.C. § 1332.

6. This Court has jurisdiction over the claims subject to ERISA under 29 U.S.C. §§ 1132(a) and 1132(e)(1).

7. This Court has jurisdiction over the claim subject to the Federal Declaratory Judgment Act under 28 U.S.C. §§ 2201 and 2202.

8. To the extent that any claims arising from the STD benefits are preempted by ERISA, then Ms. Campos pleads those claims in the alternative as subject to ERISA.

## PARTIES AND VENUE

9. Ms. Campos is a citizen and resident of Maricopa County, Arizona and was at the time of the events set forth herein.

10. Aetna, a large corporation, has its principal place of business in the State of Connecticut.

11. Aetna is licensed and authorized to do business in Maricopa County, Arizona, and resides and is found within Maricopa County, Arizona.

12. AutoZone has its principal place of business in the State of Tennessee.

13. AutoZone is the Employer, Policyholder, Plan Sponsor, and Plan Administrator for the STD and LTD Plans.

14. Aetna was the Claims Administrator for the STD and LTD Plans.

15. At all relevant times, Aetna administered claims under the STD and LTD Plans and acted on behalf of the STD and LTD Plans.

16. Aetna exercised authority to make final decisions regarding the payment of disability benefits for the STD and LTD Plans. Accordingly, Ms. Campos is informed and believes that Aetna is either: a "named fiduciary" pursuant to 29 U.S.C. § 1133(2); a "deemed fiduciary" pursuant to 29 U.S.C. § 1002 (21)(A); or a "designated fiduciary" pursuant to 29 U.S.C. § 1105(c)(1)(B).

17. Ms. Campos was eligible to receive STD and LTD benefits under the Plan.

18. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

19. Ms. Campos is entitled to *de novo* review of her claims.

**GENERAL ALLEGATIONS**

*Ms. Campos' Employment*

20. Ms. Campos began working for AutoZone on August 15, 2012.

21. Ms. Campos received STD benefits in 2014 for foot surgery and again in 2015 for rheumatoid arthritis.

22. Despite these ongoing issues, Ms. Campos returned to work each time and fought the pain.

23. As of her last day of work, September 29, 2016, Ms. Campos held the position of Order Puller, which Aetna categorized as a medium-level occupation that required lifting objects weighing up to fifty (50) pounds, frequent standing and walking, and repetitive bending.

24. Aetna described Ms. Campos's job duties as follows: "inspect and monitor equipment daily, pull merchandise, intermittent periods during which continuous physical exertion is required such as walking, standing, stooping, climbing, lifting heavy or awkward equipment."

*Ms. Campos' Disabilities*

25. Ms. Campos suffers from severe lumbar and cervical degenerative disc disease, polyarthritis, fibromyalgia, and chronic pain.

26. On September 29, 2016, Katherine Placido, PA-C of Arizona Arthritis & Rheumatology Associates, P.C. ordered that Ms. Campos cease working due to the severity of her conditions and the need for further treatment.

27. As a result, Ms. Campos applied for STD benefits.

28. For STD benefits, a claimant is disabled when limited from performing the material and substantial duties of their regular occupation due to non-work related sickness

or injury and have a 20% or more loss in weekly earnings and under the regular care of a physician.

29.     Due to her disabling conditions, Ms. Campos is unable to perform the material and substantial duties of their regular occupation.

30.     Ms. Campos is under the regular care of a physician.

*Aetna's Claim Handling*

31.     During its review, Aetna obtained medical evidence supporting Ms. Campos's inability to work.

32.     Aetna noted the following based on a December 2, 2016 Attending Physician Statement ("APS") from Ms. Campos's primary care physician's assistant, Ivette Apodaca, PA-C: "pt needs to remain [out of work] completely[;] needs to avoid lifting, bending, any repetitive movement; pt needs to be off from work completely; pt currently pending apparent med eval specialist on 12/05/16 for further treatment; [estimated return to work]: 01/06/17."

33.     Ms. Campos is informed and believes that "WOMP" is a workplace occupational management system that provides guidance on expected disability durations for individual claims.

34.     Ms. Campos is informed and believes that WOMP encourages return-to-work efforts and measures claim costs and management performance.

35.     On information and belief, Aetna uses WOMP to beat the projected disability durations and incentivizes its staff and case managers to close and/or terminate otherwise supported claims before the average estimated disability duration.

36.     Aetna noted a WOMP estimated return-to-work date of November 28, 2016, which was inconsistent with the medical evidence on file.

37.     On December 13, 2016, Aetna's nurse consultant, Juliette Zaehler, RN conducted a medical review and advised Aetna to order updated medical records from Ms. Campos's family physician *and specialists* from September to present, and to obtain

"observed mobility and impact on functionality of UE and LE strength, any joint swelling, diagnostic testing, treatment plan and effectiveness."

38. That same day, Aetna purportedly faxed a letter to Ms. Apodaca's office requesting updated medical records, because it had only received her completed December 2, 2016 APS form.

39. Aetna made no attempts to contact Ms. Campos's other physicians.

40. Aetna failed to reach out to Ms. Campos for assistance with obtaining the information it needed.

41. Instead, Aetna hastily denied Ms. Campos's STD claim on December 19, 2016.

42. In Aetna's letter dated December 19, 2016, in which it denied Ms. Campos' STD claim, Aetna falsely represented that her claim is subject to ERISA.

43. Ms. Campos expeditiously reached out to her physicians and supplied Aetna with updated medical records on December 22, 2016.

44. Aetna assigned Ms. Zaehler to review the information Ms. Campos provided, which included a September 29, 2016 office visit note from her rheumatologist. Ms. Zaehler noted exam findings of "greater than 11 tenderpoints consistent with fibromyalgia, foraminal compression/Spurlings's test positive on the left."

45. On January 5, 2017, Ms. Zaehler noted findings of "increased inflammatory markers" and "disc bulge" based on a recent MRI of her back. Based on these findings, Ms. Zaehler noted Ms. Campos's work capacity as "unclear," but continued to uphold the denial because "[c]urrent information is not sufficient to reinstate benefits are [sic] notes submitted are incomplete and do not include any exam findings," which was untrue.

46. As a result, Aetna forced Ms. Campos to go through the appeal process.

47. On February 20, 2017, Ms. Campos independently submitted her appeal.

48. During a March 8, 2017 telephone discussion with Ms. Campos, Aetna noted that Ms. Campos was referred to Dr. Abram Burgher for back surgery based on a December 27, 2016 MRI, and that she was having a second MRI the same day of the call to determine the type of surgery she would undergo. Aetna noted two upcoming

appointments on March 24, 2017 with Ms. Apodaca and her pain management doctor, Ramoun Jones, MD to discuss when the operation would take place.

49. Rather than suspending its review pending further medical analysis and treatment, on March 13, 2017, Aetna prematurely ordered a peer review from Dr. Sankar Pemmaraju, D.O., who specializes only in Physical Medicine and Rehabilitation and does not have the appropriate qualifications to opine on Ms. Campos's medical conditions.

50. Dr. Pemmaraju noted numerous physical exam findings and other objective evidence that were consistent with Ms. Campos's subjective complaints and supported Disability. Dr. Pemmaraju further noted, "[s]he is waiting for confirmation of the type of back surgery she will have, *i.e.*, open surgery or laser, and to confirm the date."

51. Over the next few months, Ms. Campos continued to communicate with Aetna and provided periodic updates on her treatment.

52. In a letter dated April 12, 2017, Aetna claimed it needed additional time for complete its review of Ms. Campos' appeal.

53. On April 17, 2017, Ms. Campos informed Aetna that an upcoming appointment was scheduled for May 15, 2017 to determine if back surgery would be needed.

54. According to Aetna's claim notes, Dr. Pemmaraju completed his review on April 27, 2017. Despite knowing that a surgical consultation was pending, Dr. Pemmaraju falsely concluded that:

> physical exam findings and diagnostic workup did not reveal any significant joint contractures present, neurological abnormalities occurring, spinal instability problems occurring, or gait abnormalities occurring and rather there was only documentation of some tenderness in various body regions and some decreased range of motion and there was no mention of the need for any particular surgery based on the diagnostic workup.

55. Aetna solicited opinions from Ms. Apodaca and Dr. Ramoun Jones and tolled its appeal review pending their responses.

56. Ms. Apodaca declined to comment, as she only treated Ms. Campos for her mental health conditions.

-6-

57. Dr. Jones declined to comment, because as a company-wide practice, his office did not participate in discussions concerning patients' disability claims. In light of this, Ms. Campos informed Aetna she would be seeking another pain management doctor.

58. On May 30, 2017, Aetna received medical records from North American Spine, which included additional objective findings to support Disability.

59. On July 20, 2017, Aetna received via facsimile a March 1, 2017 office visit note indicating the plan to perform "lumbar discectomy with neural decompression," as well as a Procedure Summary Letter advising of upcoming nerve root block procedures on August 9, 2017, and lumbar surgery on August 10, 2017.

60. On July 21, 2017, Ms. Campos informed Aetna of the upcoming surgery. That same day, Aetna forwarded the updated medical information to Dr. Pemmaraju for an addendum review.

61. On August 8, 2017, Aetna acknowledged receipt of an August 5, 2017 letter from Dr. Charles Edwards, who treated Ms. Campos for an acute appendicitis that occurred on August 3, 2017 and required immediate surgery. He advised that Ms. Campos was hospitalized through August 5, 2017, that "she was forced to cancel an upcoming back surgery while she completes treatment and recovery," and that "[t]he appropriate timing of rescheduling her back surgery will be determined at her office follow-up appointment related to the appendicitis."

62. Dr. Pemmaraju later issued an addendum report on or around August 15, 2017 based on the supplemental information supplied to Aetna.

63. Dr. Pemmaraju's addendum report acknowledged Ms. Campos's upcoming lumbar surgery scheduled for August 10, 2017, as well as numerous exam and diagnostic findings to necessitate the surgery.

64. Dr. Pemmaraju noted, "while an office note by Dr. Burgher on 3/01/2017 indicated that [Ms. Campos] had refractory low back pain that radiated to the right lower extremity in an L3-4 distribution and treatment options were discussed with the claimant including surgery involving a lumbar discectomy with neural decompression and the

claimant reportedly elected to proceed with surgery and that this surgery would most likely not improve thoracic back pain symptoms, there was no documentation of any surgery completed." But, Dr. Pemmaraju had proof that an upcoming surgery was scheduled.

65. Despite the upcoming surgery, Dr. Pemmaraju concluded, "there is no functional impairment from 09/30/16 through the current time."

66. Aetna used Dr. Pemmaraju's biased report as a basis to uphold its prior decision to deny STD benefits.

67. In a letter dated August 21, 2017, Aetna denied Ms. Campo's appeal and upheld its decision to deny her STD benefits.

68. In its August 21, 2017 letter, Aetna again misrepresented that Ms. Campos' STD claim is subject to ERISA.

69. On October 25, 2017, Ms. Campos called Aetna and requested the forms to submit her LTD claim.

70. Aetna informed Ms. Campos that it could not send her LTD forms because her STD claim was not approved.

71. Because Aetna determined Ms. Campos did not qualify for STD benefits, Aetna stated she did not qualify for LTD benefits, which constitutes a denial of her LTD benefits.

72. Aetna did not advise Ms. Campos of her rights under ERISA with respect to her LTD benefits.

73. As a result of Aetna's actions, Ms. Campos timely brings this lawsuit.

**COUNT I**
**(Unpaid Wages under A.R.S. § 23-355)**

74. All other paragraphs are incorporated herein by reference.

75. Under the Plan, AutoZone established the STD Benefit Program (the "STD Plan") "to provide income" for employees that are unable to work, including Ms. Campos.

76. Under the STD Plan, AutoZone "pays a portion of [Ms. Campos's] income if [she] become[s] disabled and cannot work due to non-work related illness or injury."

77. The STD Plan allowed Ms. Campos the option to "increase [her] income protection with optional coverage."

78. AutoZone is an employer under Arizona law and is subject to the wage laws of the State of Arizona.

79. Ms. Campos was Aetna's employee for purposes of the STD Plan and as defined under Arizona law.

80. The STD Plan constitutes a "payroll practice" exempt from ERISA, 29 U.S.C. § 1002, et. seq.

81. ERISA provides that an "employee welfare benefit plan" shall not include: "Payment of an employee's *normal compensation*, out of the *employer's general assets*, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons…." 29 C.F.R. § 2510.3-1(b)(2) (emphasis added).

82. AutoZone pays STD benefits through its regular payroll system and makes all regular payroll deductions.

83. AutoZone promised to pay its employees, including Ms. Campos, salary continuance if its employees meet the eligibility requirements set forth under the STD Plan.

84. The STD Plan is a contract under which AutoZone is obligated to pay its eligible employees salary continuance.

85. AutoZone's payments of STD benefits qualified as "normal compensation" and "closely resemble" wages or salary, thereby exempting the STD Plan from ERISA.

86. AutoZone would have paid Ms. Campos STD benefits in the form of a paycheck through its regular payroll system.

87. AutoZone had a practice of paying wages in the form of STD benefits for its employees.

88. AutoZone paid for STD benefits from its general assets.

89. Upon information and belief, AutoZone did not pay STD benefits from a separate account segregated from its general assets.

90. The STD Plan is not subject to ERISA by virtue of its integration or affiliation with any ERISA-governed plans.

91. AutoZone's attempt to characterize the STD Plan as governed by ERISA was evidence of its bad faith.

92. Ms. Campos had a reasonable expectation that she would receive STD benefits under the Plan in the form of salary continuance or wages.

93. The STD benefits are considered wages under Arizona law.

94. AutoZones's failure to pay wages due to Ms. Campos is a violation of Arizona law.

95. AutoZone intentionally, willfully, and unreasonably denied Ms. Campos's STD benefits.

96. AutoZone hired Aetna to administer STD claims knowing that Aetna had a financial conflict of interest in that Aetna insured LTD benefits for which it would not become liable if it denied STD benefits.

97. Autozone had no reasonable, good faith dispute as to the amount of wages due. Therefore, Ms. Campos is entitled to treble damages under A.R.S. § 23-355.

98. Ms. Campos has been damaged as a direct result of Aetna's failure to pay salary continuance benefits.

99. Ms. Campos is entitled to compensatory damages, as well as her attorney's fees and costs pursuant to A.R.S. § 12-341.01.

**COUNT II**
**(Recovery of Plan Benefits)**

100. All previous paragraphs are incorporated by reference.

101. The LTD Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

102. AutoZone is the Plan Sponsor and Plan Administrator for the LTD Plan.

103. Aetna insures the LTD Plan, administers claims, and owed fiduciary duties to plan participants including Ms. Campos.

104. The Plan represents LTD coverage and a promise to provide LTD benefits until Ms. Campos is no longer disabled under the terms of the Plan.

105. Aetna refused to provide the paperwork to Ms. Campos that would have permitted her to apply for LTD benefits.

106. Aetna told Ms. Campos that she was not eligible for LTD benefits until Aetna approved her STD benefits.

107. Ms. Campos was qualified for LTD benefits.

108. Ms. Campos was entitled to LTD benefits.

109. On information and belief, Ms. Campos would be eligible to receive LTD benefits under the LTD Plan until she reached age 65 or normal Social Security retirement age.

110. Ms. Campos became disabled in September 2016, and continues to be disabled. She is unable to perform the material duties of her own occupation or any reasonable occupation under the terms of the LTD Plan.

111. She tried to claim the benefits under the LTD Plan to which she is entitled, but Aetna refused to process her claim.

112. Aetna's determination that Ms. Campos was not eligible for LTD benefits was influenced by an improper conflict of interest that affected its determination of STD benefits.

113. Aetna took no safeguards to insulate its decision-making process against its significant structural conflict of interest.

114. Aetna was unduly influenced by its financial conflict of interest when deciding Ms. Campos is not eligible for LTD benefits.

115. Because Aetna denied Ms. Campos's LTD benefit based on eligibility, if she is found eligible, she is entitled to LTD benefits. *See Nieves v. Prudential Ins. Co. of America,* 233 F. Supp. 3d 755, 763-64 (D. Ariz. 2017).

116. Aetna did not advise Ms. Campos of her rights under ERISA with respect to its determination that she is not eligible for LTD benefits.

117. It would have been futile for Ms. Campos to challenge Aetna's eligibility determination.

118. Ms. Campos has exhausted or is deemed to have exhausted her administrative remedies.

119. Ms. Campos' claim for LTD benefits against Aetna are timely under the Plan provisions and applicable law.

120. Pursuant to the coverage provided in the Plan, ERISA 29 U.S.C. § 1132(a)(1)(B), and applicable federal common law, Ms. Campos is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

121. Ms. Campos is entitled to seek any and all relief allowed pursuant to ERISA, including equitable remedies, in an effort to enforce her rights under the Plan.

122. Ms. Campos is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully denied.

123. Pursuant to 29 U.S.C. § 1132(g), Ms. Campos is entitled to recover her attorneys' fees and costs incurred herein from Aetna.

124. Ms. Campos is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

## COUNT III
### (Breach of Fiduciary Duty)

125. All previous paragraphs are incorporated by reference.

126. Aetna owes fiduciary duties to participants of the LTD Plan under ERISA, 29 U.S.C. §§ 1132(a)(2), -(3).

127. Aetna is a fiduciary under the LTD Plan with fiduciary duties, including the duty to act prudently and in the best interests of plan participants and beneficiaries.

128. Aetna exercised discretionary authority or control over the management and administration of the LTD Plan.

129. Aetna denied STD benefits with the intent to prevent Ms. Campos from receiving LTD benefits, which constitutes a breach of its fiduciary duty under ERISA and the terms of the LTD Plan.

130. Aetna failed to discharge its duties with the care, skill, prudence, and diligence that a prudent man acting in like capacity and familiar with such matters would use under similar circumstances.

131. Aetna acted with malice and in bad faith against Ms. Campos by intentionally denying her STD benefits in order to avoid paying LTD benefits.

132. Aetna arbitrarily and capriciously denied Ms. Campos' eligibility for LTD benefits, which constitutes a breach of fiduciary duty.

133. In 2017, Hartford Financial Services Group ("The Hartford") and Aetna were in negotiations for The Hartford's purchase of Aetna's U.S. group life and disability business for $1.45 billion.

134. On information and belief, Aetna denied or terminated valid claims to reduce liability to facilitate the sale.

135. The sale closed in late 2017.

136. ERISA "does not elsewhere adequately remedy" the injuries caused to Ms. Campos by Defendant's breach of fiduciary duty violations. Ms. Campos seeks redress under 29 U.S.C. § 1132(a)(3) for the delay in the payment of benefits due and owing to her.

137. Aetna should be held liable for benefits it gained through unjust enrichment and for harm caused as a result of its breach to Ms. Campos. The undue delay is not contingent upon Aetna's denial of benefits and is a separate injury onto itself.

138. Aetna must return any benefits resulting from its breach to Ms. Campos.

139. Ms. Campos is entitled to pursue any equitable remedies that will put her in the position she would have attained but for Aetna's breach of its duties under ERISA and the Plan.

140. The Court can mandate the Plan establish and maintain policies and procedures to insulate the insurer's STD claim decisions from the conflict of interest due to the

-13-

insurer's potential liability for LTD benefits if it approves an STD claim.

141. The Court can also enjoin the Plan from deciding STD benefit claims until policies and procedures are established and maintained to insulate the insurer's STD claim decisions from the conflict of interest due to the insurer's potential liability for LTD benefits if it approves an STD claim.

142. Ms. Campos relied on the Plan to her detriment, believing that she was entitled to LTD benefits pursuant to the provisions of the Plan.

143. Aetna was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld benefits for its own profit.

144. Ms. Campos was harmed by Aetna's breaches of fiduciary duties.

145. If Ms. Campos is not awarded a remedy beyond an award of benefits, Aetna has no incentive to stop denying benefits under the Plan as a result of its structural conflict of interests.

146. Ms. Campos seeks injunctive relief, which would benefit not only the Plan's individual participants, but also Ms. Campos.

147. As a direct and proximate result of the breaches of fiduciary duty, Ms. Campos suffered actual financial harm and incurred financial expense.

## COUNT IV
### (Declaratory Judgment)

148. All other paragraphs are incorporated by reference.

149. Ms. Campos seeks a declaration of her rights under ERISA, and a declaration of the law that Aetna is required to consider her claim for LTD benefits.

WHEREFORE, Ms. Campos asks for entry of judgment against Defendants as follows:

    A. For all STD and LTD benefits;

    B. For treble damages for wrongfully-withheld STD benefits;

    C. For a declaration, clarifying her rights under the LTD Plan to past and future LTD benefits;

D. For appropriate equitable relief for Aetna's breach of fiduciary duty under 29 U.S.C. § 1132(a)(3);

E. For an award of Ms. Campos's attorneys' fees and costs incurred herein;

F. For an award of prejudgment interest on benefits and damages at the highest legal rate until paid in full; and

G. For such further relief as the Court deems just and reasonable.

Dated this 23rd day of April 2018.

                OBER PEKAS RONSTADT

                By: *s/ Kevin Koelbel*
                      Kevin Koelbel
                      Erin Rose Ronstadt
                      Clayton W. Richards
                      *Attorneys for Plaintiff*

OBER PEKAS RONSTADT
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745